# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

DORA K. FORD,                   )
                                )
        Plaintiff,            )
                                )
v.                              )    Case No. CIV-14-430-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
        Defendant.            )

## OPINION AND ORDER

Plaintiff Dora K. Ford (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 16, 1966 and was 47 years old at the time of the ALJ's decision.  Claimant completed her high school education.  Claimant has no past relevant work.  Claimant alleges an inability to work beginning June 1, 2008 due to limitations resulting from high blood pressure, dizziness, headaches, and problems with her arms, hands, legs, stomach, and ovaries.

**Procedural History**

On July 7, 2011, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 6, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") Doug Gabbard, II in McAlester, Oklahoma. He issued an unfavorable decision on April 2, 2013. The Appeals Council denied review of the ALJ's decision on July 25, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly consider all of the medical evidence and account for all of Claimant's impairments in the hypothetical questioning of the vocational expert and in the RFC; and (2) failing to perform a proper credibility determination.

## Step Five Evaluation

In his decision, the ALJ found Claimant suffered from the severe impairments of mild cervical degenerative disc disease, obesity, and vision problems. (Tr. 114). The ALJ determined Claimant retained the RFC to perform light work. In so doing, the ALJ found Claimant could occasionally lift/carry 20 pounds and frequently 10 pounds; stand/walk six hours in an eight hour workday; and sit for six hours in an eight hour workday. The ALJ limited Claimant to not performing work which requires depth perception. Claimant must alternate sitting and standing every 10 minutes throughout the workday in order to change positions, but without leaving the workstation. He concluded Claimant could perform less than a full range of light work. (Tr. 119).

After consulting with a vocational expert, the ALJ concluded that Claimant could perform the representative jobs of laundry folder and price marker, both of which the ALJ determined existed in sufficient numbers in both the regional and national economies. (Tr. 125). As a result, the ALJ determined Claimant was not under a disability since July 7, 2011, the date the application was filed. (Tr. 126).

Claimant contends the ALJ failed to pose an appropriate and complete hypothetical question to the vocational expert which included all of his functional limitations. Claimant first states

5

the ALJ did not include the full extent of her vision problems. His questioning of the vocational expert and RFC address problems with depth perception. Claimant states the ALJ recognized in the decision that the ophthalmologist affirmed Claimant's intermittent estropia which "could certainly affect fusion and depth perception." (Tr. 124). The ALJ did not include restrictions on fusion. "Fusion" is defined as the mechanism by which both eyes blend slightly different images from each eye into a single image.

On August 29, 2011, Claimant was seen by Dr. Randel L. Saylor who evaluated her esotropia. He opined that the intermittent esotropia "which apparently is long-standing" could affect her fusion and depth perception. (Tr. 364-65). Dr. Saylor determined Claimant's corrected vision to be 20/30 on the right and 20/40 on the left. (Tr. 364). Claimant attributes her blurry vision and problems with her visual acuity to this condition. No medical professional has joined in this diagnosis. Nothing in the record indicates that this condition affects Claimant's ability to engage in basic work activities. The problem, if it is causing the conditions claimed by Claimant, is recognized as intermittent. No error is found in the failure to include this condition in either the RFC or the hypothetical questioning of the vocational expert.

Claimant also contends the jobs identified by the vocational expert require frequent near acuity in vision. Based upon Dr.

Saylor's acuity testing, this Court cannot find that Claimant does not have the acuity to perform the identified jobs.

Claimant states that she suffers from tingling and numbness in her extremities which would limit her RFC and the jobs she could perform. Tingling and numbness are merely symptoms and not a medically determinable impairment. Soc. Sec. R. 96-4p ("[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment."). The record does not indicate that Claimant has consistently complained of tingling and numbness to her treating physicians. (Tr. 118). As Defendant points out, the four instances where this symptom was mentioned occurred outside of the relevant time period. Moreover, no medical professional has found limitation from this condition which would preclude Claimant's engaging in basic work activities.

Claimant also contends she suffers from debilitating pain. However, on many occasions, Claimant denied that she experience pain in the treatment notes stemming from her physical examinations. (Tr. 369, 371, 375, 379, 381, 524, 528, 530, 537, 544, 602, 667, 673). The ALJ indicated in his decision that the objective medical record only demonstrated mild degenerative disc disease of the cervical spine. (Tr. 680). The ALJ did not deny Claimant suffered discomfort from her condition. He correctly noted the standard is whether the pain is of such severity as to

render her disabled. (Tr. 124). He found no observable manifestations of her pain and no significant medical findings to support the level of pain attested to by Claimant. Id. No error is found in the ALJ's analysis.

Claimant also asserts the ALJ should have found mental impairments. On September 8, 2010, Dr. Kenny Paris performed a consultative mental examination of Claimant. He noted impaired memory skills with no significant problem with persistence and pace. Her ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers was estimated by Dr. Paris to be average. Dr. Paris found Claimant's concentration, comprehension, and vocabulary to be low. He offered no diagnosis at Axis I, a deferred diagnosis rule out mental retardation at Axis II, and a GAF of 60. (Tr. 502).

Dr. Kieth McKee completed a Psychiatric Review Technique on October 5, 2010. He concluded Claimant had no medically determinable mental impairment. (Tr. 505). Dr. McKee reported Claimant denied mental health services and psychiatric problems. She was alert, oriented with no evidence of a thought disorder. Her verbal skills were adequate. Her estimated IQ was borderline between 70 and 79. Memory skills were impaired though her persistence and pace were intact. Her ability to handle stress in the work place and deal with supervision or co-workers was average.

8

Her judgment was adequate. As with Dr. Paris, Dr. McKee found Claimant's problems were more related to her physical condition rather than a mental impairment. (Tr. 517). No evidence in the record supports a finding of a mental impairment that would preclude Claimant from engaging in basic work activities. Dr. Paris and Dr. McKee found her ability to work to be average in spite of their finding of low concentration and memory impairment. No error is found in the ALJ's omission of a mental impairment in the RFC.

Claimant also states the ALJ found her testimony that she could only lift a gallon of milk after surgery to be "reasonable" so, given the weight of a gallon of milk, she could not perform light work. Contrary to Claimant's contention, finding Claimant's testimony "reasonable" does not equate with the adoption of a definitive weight restriction by the ALJ. He stated that given the nature of the surgery - a mass removed and hernia repaired - a reduction to light work was in order. The medical and functional evidence supported a medium work restriction. (Tr. 650, 658).

### Credibility Determination

The ALJ questioned the extent of Claimant's limitations in light of the record. He noted the lack of observable manifestations, such as loss of weight, muscular spasms, prolonged bed rest, or adverse neurological signs. The objective medical

9

record did not support the extent of Claimant's asserted limitations due to her impairments. (Tr. 124).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's

credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391.  However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  This Court finds that the ALJ's findings on credibility are affirmatively linked to the objective record and is supported by substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 29th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE